UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

LEO RAYMOND SAUSEDO,   No. C 12-1636 RS (PR)

   Petitioner,   **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

 v.

J. CHOATE, Warden,

   Respondent.
_____ /

## INTRODUCTION

Petitioner Leo Raymond Sausedo seeks federal habeas relief from his state convictions alleging claims that (1) the trial court denied him the right to cross-examine the victim sufficiently; and (2) defense counsel rendered ineffective assistance. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

On October 7, 2009, a jury convicted petitioner of spousal rape, corporeal injury to a spouse and violating a restraining order. On November 24, 2009, petitioner was sentenced to prison for six years. Petitioner filed a direct appeal, which included his first claim based on the right to cross-examine a witness. On May 20, 2010, the California Court of Appeal, in an unpublished written opinion, affirmed the judgment. On July 28, 2010, the California Supreme Court denied his petition for review.

Petitioner filed a petition for a writ of habeas corpus in the Santa Clara Superior Court, asserting his ineffective assistance of counsel claims. On February 25, 2011, the court, in an unpublished written decision, denied the petition. Petitioner's petitions to the

California Court of Appeal and the California Supreme Court were denied without comment.

Petitioner and the victim, Doe,[1] went to middle school together and began dating when petitioner was twenty-three years old. They courted for three years, had a baby and were married in January 2006. Their relationship, during their courtship and marriage, was volatile. They both drank alcohol, they argued and they had physical altercations.

On the evening of November 4, 2007, they were drinking at a friend's house and had an argument while driving home. Petitioner left Doe at the side of the road. Doe telephoned a friend, who picked her up and drove her home.

According to Doe, the next thing she remembers is being naked on her bed with petitioner on top of her choking her with his hand and penetrating her vagina with his penis. Petitioner stopped when Doe vomited. Petitioner also vomited. They went to the bathroom. Petitioner told Doe "not to say it was rape." In the bathroom, Doe went halfway out of the window and screamed for help. Petitioner pulled her down from the window and punched her in the face. Doe took a shower. When Doe finished the shower, she called 911 and reported that petitioner had beaten her. When the investigating detective arrived, Doe said petitioner had choked her in bed. She pointed to her face and said, "This is what my husband did to me." The next day, Doe told a different detective that she woke on the bed with petitioner on top of her and choking her. When she told him to get off, he refused and punched her while having sexual intercourse.

According to petitioner, after he left Doe on the side of the road, he drove home and took a walk. He saw Doe arrive home with her friend and waited for the friend to leave. He then entered the home and saw Doe on the stairs. Doe said to him, "Are you ready to fuck me now?" Petitioner agreed and followed Doe upstairs. Doe went to the bedroom and petitioner went to the bathroom. Petitioner then joined Doe in the bedroom and the two engaged in sexual activities, including intercourse. After Doe vomited and they went to the bathroom, Doe began punching petitioner in the head. Petitioner resisted during a ten-minute

---

[1] The state courts used the name "Doe," to ensure the victim's privacy. For the same reason, the victim is designated as "Doe" in this Order.

2

struggle. At some point, petitioner pushed Doe to the ground and left the bathroom. As he left, he swung the bathroom door behind him and the door hit Doe. (Ans., Ex. E (Court of Appeal Opinion) at 1-3.)

## STANDARD OF REVIEW

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409. In other words, federal habeas relief is available only if the state court's application of federal law is "so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.'"

3

*Nevada v. Jackson*, __ U.S. __, 133 S. Ct. 1990, 1992 (2013) (citing *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011)).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion of the highest court to analyze whether the state judgment was erroneous under the standard of § 2254(d). *Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991). In the present case, the California Court of Appeal, in its opinion on direct review, addressed the first claim petitioner raises in his federal petition. The California Supreme Court summarily denied petitioner's petition for review. Thus, the Court of Appeal is the highest court to have reviewed this claim in a reasoned decision, and it is that decision that this Court reviews. The Superior Court, on habeas review, addressed petitioner's ineffective assistance of counsel claims. The Court of Appeal and the Supreme Court denied his habeas petitions without comment. Therefore, the Superior Court is the highest court to have reviewed the ineffective assistance of counsel claims in a reasoned decision, and it is that decision this Court reviews.

## DISCUSSION

### I. Limiting Cross-Examination of Doe

Petitioner argues that the trial court's refusal to allow defense counsel to cross-examine Doe about nude photographs found on her phone violated his due process right to present a defense and his Sixth Amendment right to confront witnesses against him.

The Court of Appeal summarized the facts regarding this claim as follows:

> Before trial, defendant made a motion to allow evidence of Doe's sexual conduct. Specifically, defendant wished to question Doe about nude photographs of herself that she disclosed to "defendant and other people." The purpose was to use the evidence to show a "Motive to fabricate by the witness if she had an on-going sexual relationship after the rape that is accused in this proceeding." Defendant explained that he had discovered a nude photo of Doe on a phone, which suggested that Doe was having an ongoing sexual relationship with someone. From this, he wished to argue to the jury that Doe "had a motive to get rid of [defendant] to pursue a new relationship especially with a pending family law dispute and issue of custody." Responding to the trial court's questioning, defendant clarified his point: "It places a motive in her mind to get rid of [defendant] and pursue a new life and to win the custody dispute. It goes hand in hand with the custody dispute. If she has a chance at a different life that she's not happy with how [sic ], I think it's fair opportunity for [me] to get in that she has reason to lie, to put [me] away."

4

> The People disputed that the evidence was relevant, commenting that "Her engaging in whatever, the normalization of her life after she was raped I think is something that is completely out of bounds to ask a rape victim."
>
> The trial court denied the motion, noting that it intended to give defendant "a lot of reasonable liberality . . . in establishing her reasons and motives for fabricating" outside of "testimony about nude photos or sexual conduct with other people." It explained: "Unless the People somehow or the witness opens the door in a way that I'm having a hard time seeing, I'm not seeing the relevance. And I think in a balancing under [Evidence Code section] 352 that I'm not seeing enough relevance for that to be admissible, so I'm going to exclude testimony regarding any photos, nude photos as it were or testimony about sexual conduct with another."

Ex. E. at 3-4.

### A. Federal Authority--Due Process Violation

A state court's evidentiary ruling is not subject to federal habeas review unless the ruling violates federal law, either by infringing upon a specific federal constitutional or statutory provision or by depriving the defendant of the fair trial guaranteed by due process. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Jammal v. Van de Kamp*, 926 F.2d 918, 919-20 (9th Cir. 1991). "State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citations omitted); *see also Montana v. Egelhoff*, 518 U.S. 37, 42 (1996) (due process does not guarantee a defendant the right to present all relevant evidence). The introduction of relevant evidence can be limited by the State for a "valid" reason. *Id.* at 53. This latitude is limited by a defendant's constitutional rights to due process and to present a defense, rights originating in the Sixth and Fourteenth Amendments. *Holmes*, 547 U.S. at 324. Due process is violated only where the excluded evidence had "persuasive assurances of trustworthiness" and was "critical" to the defense. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973); *Perry v. Rushen*, 713 F.2d 1447, 1455 (9th Cir. 1983); *DePetris v. Kuykendall*, 239 F.3d 1057, 1063 (9th Cir. 2001). "Only rarely [has the Supreme Court] held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Jackson*, 133 S. Ct. at 1992.

**B. Federal Authority--Confrontation Clause Violation**

The "Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (per curiam).  Accordingly, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examinations based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

A court violates the "Confrontation Clause only when it prevents a defendant from examining a particular and relevant topic." *Fenenbock v. Director of Corrections*, 692 F.3d 910, 919 (9th Cir. 2012).  A defendant meets his burden of showing a Confrontation Clause violation by showing that "[a] reasonable jury might have received a significantly different impression of [a witness'] credibility . . . had respondent's counsel been permitted to pursue his proposed line of cross-examination." *Van Arsdall*, 475 U.S. at 680; *Slovik v. Yates*, 556 F.3d 747, 753 (9th Cir. 2009).

**C. Analysis**

The Court of Appeal denied this claim on the ground that defense counsel extensively cross-examined Doe, focusing on the inconsistencies in her statements, her intoxication on the night of the rape and her inability to recall events.  Ex. E. at 7.  The Court of Appeal concluded that, "a reasonable jury would not have received a significantly different impression of Doe's credibility had evidence of Doe's sexual relationship with another been admitted." *Id.*  The Court of Appeal's decision was not objectively unreasonable.

Defense counsel cross-examined Doe about her inconsistent statements to the 911 operator, to law enforcement on the night of the rape, her testimony at the preliminary hearing and at the trial and about her inability to recall certain events.  *See* Reporter's Transcript ("RT") at 418-20; 427-28; 435-36; 446-47; 460-61.  Defense counsel also cross-examined Detective Edgar Hernandez, the investigating officer, about Doe's inconsistent and vague statements.  RT at 650; 653-55.

6

The fact that counsel was not able to question Doe about nude photographs of herself that she may have sent to someone after the rape did not prevent counsel from effectively impeaching her credibility on more relevant topics, such as her inconsistent descriptions of the events comprising the charged offense of rape and her different descriptions of those events to law enforcement and in her testimony at the preliminary hearing and at trial. Furthermore, the photographs were not related to the events on the night in question and, thus, involved minimally relevant information.

In his traverse, Petitioner acknowledges that defense counsel extensively cross-examined and impeached Doe with prior inconsistent statements. Nevertheless, he insists that questioning Doe about the nude photographs, which may have led to evidence that she was in a romantic relationship with someone prior to the rape, would have shown that she had a motive for lying about the rape to ensure that petitioner would be gone from her life and she would be able to enter into a new relationship. However, as pointed out by the Court of Appeal, under California's family law system, there is no need to put a spouse in prison on fabricated charges of rape in order to be free to engage in a new relationship. *See* Ex. E at 6. Because the evidence petitioner wished to question Doe about was only minimally relevant to the events at issue, he fails to show a violation of his due process or his confrontation rights.

The California Court of Appeal's denial of his claim was not an unreasonable application of Supreme Court authority. Habeas relief on this claim is denied.

**II.    Ineffective Assistance of Counsel**

Petitioner argues his defense counsel rendered ineffective assistance based on the fact that counsel: (1) adduced evidence of petitioner's guilt; (2) failed to impeach Doe; (3) agreed to an improper answer to a jury question; and (4) consented to an improper amount of restitution.

**A. Federal Authority**

A claim of ineffective assistance of counsel is cognizable as a claim of the denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective

7

assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. In other words, to demonstrate deficient performance, a petitioner is required to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly established Federal law, as determined by the Supreme Court of the United States" for the purposes of 28 U.S.C. § 2254(d) analysis. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011). A "doubly" deferential judicial review is appropriate in analyzing ineffective assistance of counsel claims under § 2254. *Id.* at 1410–11. The general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference, gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). When § 2254(d) applies, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 131 S. Ct. at 788.

### B. Subclaim 1--Evidence of Petitioner's Guilt

Petitioner argues that, but for trial counsel's eliciting incriminating evidence during

8

his cross-examination of Doe, there would have been insufficient evidence to convict petitioner of spousal rape. The state Superior Court denied this claim:

> First, there was more than sufficient evidence elicited during direct examination of the victim to satisfy the elements of spousal rape. The victim awoke to Petitioner choking her to the point where she could not breathe. (RT 248: 14-16.) She was naked, and Petitioner was on top of her. (RT 245: 21-15.) When she tried to lift herself up off the bed to breathe, Petitioner penetrated her vagina with his penis. (RT 248: 3-6). During this time, the victim was unable to talk because Petitioner continued to choke her. (RT 248: 7-16). This evidence was enough to meet the elements of spousal rape.
>
> Second, in the face of such evidence, counsel's cross-examination necessarily delved into the details of the offense and tested the victim's memory. The fact that the victim had a good memory of the offense is not a consequence of substandard representation on the part of Petitioner's counsel.
>
> Thus, counsel's representation did not fall below an objective standard of reasonableness in cross-examining the victim, nor did the cross-examination prejudice Petitioner.

Ex. H at 2-3.

As the Superior Court noted, independent of defense counsel's cross-examination of Doe, the prosecutor elicited ample evidence on direct examination to support the jury's finding that petitioner had committed spousal rape. On direct examination, Doe testified that when she woke up on the night of the rape, she was in bed naked with petitioner on top of her, attempting to have intercourse with her in a rough manner. RT 245. Petitioner was choking her and trying to engage in sexual intercourse. RT 246. One of his hands was around her neck. RT 247. She was lifting her body off the bed and, at the same time, she was trying to breathe. RT 247-48. She couldn't breathe at all. RT 248. She was crying while petitioner was having sex with her. RT 272. Petitioner stopped when Doe threw up. *Id.* When Doe got to the bathroom, she went to the window and screamed for help. RT 249.

To prove that petitioner was guilty of spousal rape, the prosecutor had to prove: (1) petitioner had sexual intercourse with a woman; (2) he and the woman were married to each other at the time of the intercourse, (3) the woman did not consent to the intercourse; and (4) petitioner accomplished the intercourse by force, violence, duress, menace or fear of immediate and unlawful bodily injury to the woman or someone else. RT 1025 (Jury Instruction). The above-cited evidence elicited by the prosecutor was sufficient to satisfy the

9

1 four elements of spousal rape.  Therefore, no matter what evidence defense counsel elicited,
2 petitioner cannot show prejudice because the prosecutor established all the elements of
3 spousal rape on direct examination.

4 Furthermore, in light of Doe's testimony on direct examination, counsel necessarily
5 had to focus his cross-examination on the details of the incident to test Doe's memory and to
6 impeach her testimony.  Given the doubly deferential review of counsel's performance in a
7 habeas proceeding, the Superior Court's finding that counsel's performance was not deficient
8 is not objectively unreasonable.

9 Petitioner focuses on specific questions defense counsel asked Doe and her responses
10 which provided more details of the rape.  Petitioner faults counsel for eliciting this testimony,
11 arguing that this provided more evidence of his guilt.  However, in context, counsel's
12 questions and closing statement show that his strategy was to cause Doe to make inconsistent
13 statements in order to impeach her and bring her credibility into question.

14 Petitioner also argues that counsel, in his closing argument, disparaged petitioner, RT
15 1073, and told the jurors to agree unanimously that petitioner was guilty as charged, RT
16 1100.  Petitioner misconstrues counsel's closing argument.  Although counsel described
17 petitioner as "pathetic," he did not intend to demean petitioner, but to highlight petitioner's
18 courage in testifying so that the jury could "hear it from his mouth."  RT at 1073.  He also
19 used petitioner's inexperience as a way to compare his testimony and demeanor favorably to
20 that of Detective Hickman, an important prosecution witness, who had over twenty-three
21 years of experience and was paid to testify as part of his job.  RT at 1077-78.

22 In his closing argument, defense counsel stated:

> Now when you go back there to the jury room you're all going to have questions and concerns and be discussing the evidence . . . You're not going to convince everybody to think your way. . . . That's not important.  The importance is that you come up unanimously with the decision that he committed the crimes he's charged with, that it wasn't self-defense.  It's not our burden to prove it was self-defense.  The prosecution has the burden of proof that is was not self-defense beyond a reasonable doubt. . . .

RT 1100-01.

28 Then counsel discussed how the evidence did not support guilt beyond a reasonable

10

doubt. Thus, counsel used the language to which petitioner objects, but only to introduce his argument that the evidence did not allow the jury to find petitioner guilty.

Throughout his closing argument, trial counsel presented petitioner as a person who might have a volatile temper, but who "did his best." RT 1076. He also described petitioner as being honest, not lying to the police, and not hiding his negative conduct, such as kicking Doe in her stomach during a past argument. RT 1075-76. A major theme of counsel's defense was that the relationship between petitioner and Doe was mutually abusive, that petitioner and Doe fought physically many times and that Doe was the aggressor as much as petitioner. For instance, counsel argued to the jury:

> We have evidence that she admitted to hitting him. . . in the past. She chased him into a bathroom in Ceres, just like it happened on this occasion. . . Now why is that important? These things don't happen in a vacuum. . . . Kicked in the stomach. . . . Leo did his best, he didn't deny it. I kicked her in the stomach. We were fighting. I was frustrated. This is evidence of a bad relationship. That's what it is. Sure, nobody is going to deny. He didn't deny. He admitted it to you. He admitted he was frustrated.
>
> Now there's another incident where [the victim] first accuses Leo of running her over, and it's ultimately determined to be an accident. The police investigate. Leo takes off. He turns himself in after he gets his senses. This is a situation where they're fighting. They're drinking at an event. They're arguing in a car. Somebody pulls over. Somebody gets out. Somebody takes off. This time he hears a scream. Does he turn back and say, oh no, and take off? He turns around, puts her in the car and takes her to her aunt's. . . . That's Leo being Leo. Hey. That's not a rapist. He did his best. He did not try to hide. He didn't' try to deny important things like a kick in the stomach. . . . He's not a liar. . . He's uncomfortable. He's nervous. He's probably trying to make sure that his ideas and concerns and truth that he's trying to relay to you is convincing and he stumbles. Is that reasonable for someone to act that way? . . . Now is Leo somebody you would want to say hi to in a grocery store? Probably not. Is he somebody that you would want your kids to grow up to? Probably not. Doesn't mean he's any less of a person, has any less rights than we do. Are you going to hold that against him? Now that's pretty much what the presumption of innocence means. Treating somebody like Leo the same way you would a firefighter.

RT 1075-76.

This is one short section of defense counsel's long closing argument to the jury. This passage shows that, rather than denigrating petitioner, counsel was praising him for his honesty and for doing the right thing in difficult situations. Rather than putting petitioner down, he was asking the jurors to consider the evidence in relation to petitioner as they would consider it in relation to a hero, such as a firefighter. Thus, petitioner's argument that

11

1 counsel elicited evidence proving petitioner's guilt and that, in his closing argument, counsel
2 denigrated petitioner and told the jury to convict him, is without merit.

3      The state court's conclusion that counsel's performance was not deficient and that
4 petitioner failed to establish prejudice as a result of counsel's allegedly deficient performance
5 is not objectively unreasonable. Habeas relief on this claim is denied.

### B. Subclaim 2--Failure to Impeach Doe

7      Petitioner claims that his counsel was ineffective because he failed to impeach Doe.
8 The state Superior Court denied this claim on the ground that no prejudice resulted from
9 counsel's failure to impeach Doe on the peripheral matters raised by petitioner.

10      Petitioner argues that the state court's decision is unreasonable because there were
11 many instances where Doe made inconsistent statements to the 911 operator, to the
12 investigating detective, at the preliminary hearing, at trial and, had counsel impeached Doe
13 with these inconsistencies, "it would have changed the entire evidentiary posture of the trial
14 with respect to the rape charge." Memorandum in Support of Petition at 10. However, Doe's
15 inconsistent statements and contradictory behavior were first brought out at trial on direct
16 examination by the prosecutor. *See* RT 259 (Doe did not tell 911 operator she had been
17 raped); RT 264 (Doe uncooperative with police and refused to undergo a sexual assault
18 exam); RT 269 (Doe lied to investigating officer about petitioner punching her during sex
19 act); RT 271 (Doe admitted petitioner choked her many times previously during sex and she
20 did not consider it to be rape); RT at 282 (Doe lied at preliminary examination). On cross-
21 examination, counsel elicited more admissions of inconsistent statements from Doe. *See* RT
22 435-36 (Doe admitted she only told the 911 operator that petitioner had beaten her, not that
23 he raped her; RT 435-36; RT at 436 (Doe falsely told 911 operator petitioner said he would
24 kill her); RT 427 (Doe told investigating officer petitioner hit her during sex but now realized
25 he did not hit her during sex); RT 430 (Doe admitted to prior rough sex and choking); RT
26 448 (Doe admitted petitioner did not hit her until they were in the bathroom, after sex act
27 finished); RT 454-55; 460-61 (Doe admitted she testified untruthfully at preliminary
28 examination).

12

On this record, petitioner has failed to satisfy either prong of the *Strickland* test.  First, he fails to establish deficient performance.  Trial counsel impeached Doe on the relevant issues where she had made inconsistent statements and, in his closing argument, addressed her lack of credibility and inability to remember.  *See* RT 1074-75; 1078; 1087-92; 1095.  Although there may have been opportunities to impeach Doe with other inconsistent statements, in light of the great deference given to counsel's strategic trial decisions, including impeachment of witnesses, this record does not show deficient performance.  *See Brown v. Uttecht*, 530 F.3d 1031, 1036 (9th Cir. 2008) ("We give great deference to counsel's decisions at trial, such as refraining from cross-examining a particular witness.") (internal quotation and citation omitted); *Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) (deference given to counsel's tactical decisions, such as refraining from cross-examining a particular witness or from asking a particular line of questions).

Second, although petitioner argues that further impeachment would have placed Doe's credibility at issue, the record shows that her inconsistent statements and her credibility were major trial issues.  Given that counsel established Doe's lack of credibility, petitioner has not shown  a reasonable probability that, but for counsel's failure to impeach Doe further, the result of the proceeding would have been different.  The state court's denial of this claim was not objectively unreasonable.

**C. Subclaim 3--Answer to Jury's Question**

Petitioner argues that counsel was ineffective because he agreed to an improper answer to a question presented by the jury during its deliberations.

**1. Background**

As mentioned previously, the trial court instructed the jury on the elements of spousal rape as:  the defendant had sexual intercourse with a woman who is his wife; the wife did not consent; and the defendant accomplished the intercourse by force, violence, duress, menace or fear of immediate and unlawful bodily injury.  RT at 1025.  The trial court further instructed as follows:

To consent, a woman must act freely and voluntarily and know the nature of the act.

13

> A woman who initially consents to an act of intercourse may change her mind during the act. If she does so, under the law, the act of intercourse is then committed without her consent if: One, she communicated to the defendant that she objected to the act of intercourse and attempted to stop the act; two, she communicated her objection through words or acts that a reasonable person would have understood as showing her lack of consent and; three, the defendant forcibly continued the act of intercourse despite her objection.
>
> Evidence that the defendant and the woman were married is not enough by itself to constitute consent.
>
> Intercourse is accomplished by force if a person uses enough physical force to overcome the woman's will.
>
> Duress means a direct or implied threat of force, violence, danger, or retribution that would cause a reasonable person to do or submit to something that she would not do or submit to otherwise.
>
> When deciding whether the act was accomplished by duress, consider all the circumstances including the woman's age and her relationship to the defendant.
>
> Menace means a threat, statement or act showing intent to injure someone.
>
> Intercourse is accomplished by fear if the woman is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it.

RT 1025-26.

During deliberations, the jury sent the following note to the court:

> Can we get advice on CALCRIM 1000. Also with respect to consent and duress. Does fear of bodily injury that may turn into compliance override #3 consent on page #9 of jury instruction packet?
>
> Does fear of injury or duress which causes a victim to become compliant for her own safety constitute lack of consent?

Clerk's Transcript ("CT") at 259.

The court indicated that it had met with the prosecutor and defense counsel off the record to discuss the jury question. RT 1403-04. The court stated, "An answer was formulated to the question which was sent back to the jury with the agreement of the parties." RT 1404. The written response to the question was, "After consulting with counsel, the jury is told, the answer is 'yes.'" CT 259.

### 2. State Court Decision

The state Superior Court rejected this claim:

> Petitioner complains that because there was evidence that the victim was a willing

14

participant when the intercourse began, the Court's answer removed the elements that required the jury to find that the victim communicated the revocation of her consent to Petitioner and that he continued forcibly. Petitioner's claim lacks merit. First, there is no indication that the jury found that the victim initially consented; in another part of the note, they specifically reference element 3 of CALCRIM 1000, which is the element of lack of consent. Further, the Court's response was proper and did not remove an element of the offense. If the jury found that the victim only consented because of fear of injury, then the victim did so under duress and Petitioner would be guilty of rape. Nothing in the Court's answer suggested that if the jury found the victim initially consented, they did not have to find true the three additional elements listed in CALCRIM 1000. As such, defense counsel was not ineffective in this regard.

Ex. H at 3-4.

### 3. Analysis

A state court's interpretation of state law binds a federal court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 629-30 (1988). The state's highest court is the final authority on the law of that state. *Sandstrom v. Montana*, 442 U.S. 510, 516-17 (1979). Even a determination of state law made by an intermediate appellate court must be followed and may not be "'disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Hicks*, 485 U.S. at 630 n.3 (quoting *West v. American Telephone & Telegraph Co.*, 311 U.S. 223, 237-38 (1940)). Thus, a federal court on habeas review is bound by a state court's interpretation of state law. *Bradshaw*, 546 U.S. at 76; *Hicks*, 485 U.S. at 629. The only exception is when the state court is engaging in obvious subterfuge to evade consideration of a federal issue. *Mullaney v. Wilbur*, 421 U.S. 684, 691 n.11 (1975).

The state habeas court held that the trial court's response to the jury's question regarding consent and duress was a correct statement of California law and that it did not remove an element of the offense from the jury's consideration. Ex. H at 4. Petitioner presents no evidence of subterfuge. This Court, therefore, must defer to the state court's interpretation of its own law.

In light of the Superior Court's conclusion that the response to the jury's question was correct, petitioner cannot prove that counsel was deficient in approving it or that he suffered prejudice as a result. Petitioner is not entitled to federal habeas relief on this claim.

### D. Subclaim 4--Improper Amount of Restitution

Petitioner argues that counsel rendered ineffective assistance for failing to investigate Doe's claimed loss when calculating victim restitution and for failing to object and request a hearing on the amount of restitution ordered.

A federal habeas court is limited to review of challenges concerning the petitioner's being in custody in violation of the United States Constitution. *See* 28 U.S.C. § 2254. A federal court, then, lacks jurisdiction to hear claims that challenge the money portion of a state judgment, such as a restitution order, which does not affect the duration of custody. *See Bailey v. Hill*, 599 F.3d 976, 981 (9th Cir. 2010) (affirming rejection of habeas ineffective assistance of counsel claim based on counsel's failure to challenge restitution order because restitution does not affect duration of custody). Because a claim challenging a restitution order is not cognizable on habeas review, so is a claim asserting that counsel was ineffective in connection to a restitution order. *Id.* (citing *Washington v. Smith*, 564 F.3d 1350, 1350 (7th Cir. 2009). Therefore, petitioner's claim pertaining to restitution does not state a claim that is cognizable on habeas review and is denied.

## CONCLUSION

The state courts' denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealibility will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals. The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

DATED: April 14, 2014

RICHARD SEEBORG
United States District Judge

16